UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JAMES DENNIS,

Plaintiff,

v.                                             Civil Action No. 2:11-cv-00401-MSD

WELLS FARGO BANK, N.A., et al,

Defendants.

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

COMES NOW, the Plaintiff, James Dennis, by counsel, and for his opposition to the Defendant's Motion to Dismiss his Amended Complaint (Defs' Mem.) (Docket # 20), he respectfully submits this memorandum of law.

### INTRODUCTION

The Plaintiff, Mr. Dennis, has filed a fact-intensive Complaint, above and beyond that which is required by Fed. R. Civ. P. 8, which not only states its claims, but also puts the Defendants fully on notice of the allegations against them. In support of its Motion to Dismiss, the Defendants apply and argue an incorrect standard under Fed. R. Civ. P. 12(b)(6), assert as true their version of disputed facts, and attempt to rewrite the established law of this District and Circuit concerning ECOA claims, breach of the implied covenant of good faith and fair dealing, and their obligation to strictly comply with the Note and Deed of Trust.

Mr. Dennis' Amended Complaint alleges that he entered into a mortgage loan on his condominium. The loan was evidenced by a note and secured by a Deed of Trust which were both signed by them. (Am. Compl. ¶ 25). The Defendants, Wells Fargo Bank, N.A. (hereinafter "Wells Fargo") and Federal Home Loan Mortgage Corporation (hereinafter "Freddie Mac")

represented that they would help Plaintiff when he contacted them for assistance after experiencing a deterioration in his financial situation. Defendants represented that they were participating in a federal program, Home Affordability Modification Program (hereinafter "HAMP"), that recognized the economy was in distress and that millions of homeowners were struggling.

Mr. Dennis applied for a loan modification based on Wells Fargo's promise to help. Wells Fargo did not keep their promises, nor did they work with Mr. Dennis. After Mr. Dennis entered into a Trial Period Plan (TPP) and made **twelve months** of modified payments under the TPP, Defendants refused to permanently modify his loan without providing a true or complete reason. Instead, Wells Fargo demanded an "initial payment" and instructed Plaintiff to stop making his TPP payments so they could evaluate him for a new loan modification following his bankruptcy. Always, Mr. Dennis did exactly what Wells Fargo required. However, Wells Fargo did not properly evaluate his updated financial information to see if he was eligible for a loan modification. Instead, they foreclosed while his application was pending. Defendants then attempted to evict Mr. Dennis from his home. The Amended Complaint seeks legal recognition that this foreclosure is invalid by pursuing Virginia common law causes of action.

One of the claims in the Amended Complaint is that Defendants violated the Federal Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691, *et.seq.,* and its Virginia equivalent by failing to provide him a lawful explanation of why his loan modification application was rejected. 15 U.S.C. § 1691(d). In Defendant's view, there is no scenario when it is obliged to send an ECOA adverse action notice to a consumer following a Trial Period Payment Plan under HAMP.[1]

---

[1] The identical arguments were recently rejected in a comprehensive decision in this District on all fours with the present case. *Bourdelais v. J.P.Morgan Chase*, 3:10-CV-670-HEH, 2011 WL 1306311 (E.D. Va. Apr. 1, 2011).

The core of much of Defendants' argument is that Plaintiff is attempting to enforce the federal HAMP program, a program whose implementing statute does not provide a private cause of action. However, this argument mischaracterizes the state law counts of the Amended Complaint. The Virginia common law causes of action must be proven through established elements; not the violation of a statute. Mr. Dennis is not asking this Court to enforce the HAMP federal program. While the HAMP federal program may be integrally tied to the facts of the Complaint, it is not the legal theory being pursued.

Moreover, a denial of a private cause of action in a federal statute merely means an individual cannot sue a statute's violator under the statute. It does not extend so far as to preempt other causes of actions with their own elemental requirements, arising under the same facts. *Allen v. CitiMortgage*, No. CCB-10-2740, 2011 WL 342665, at *5(D. Md. Aug. 4, 2011). If it did, the result would shield a violator of federal law from private enforcement of state law, completely obviating any recourse. The legislature's failure to specify a private right of action under HAMP does not allow Defendants to violate a consumer's rights, render the terms of the contract meaningless, reward inequitable conduct, and leave homeowners such as Mr. Dennis without any redress under the law. This scenario is repeated over and over throughout the country and cries out for judicial relief.

## COMPLAINT ALLEGATIONS

1.    In November 2007, Mr. Dennis entered into a mortgage loan on his condominium for a principal sum of $90,800.00. (Am. Compl. ¶¶ 25-26). He consistently paid his mortgage payments each month up through April 2009 when he began to experience severe financial difficulties (Am. Compl. ¶ 60).

3

2.   Because of this financial hardship, Mr. Dennis contacted Wells Fargo in April 2009 and informed them that he was struggling financially and would like to apply for a loan modification.  Wells Fargo told Mr. Dennis that he was not eligible for HAMP because he was still current on his mortgage payments, which was incorrect because a borrower does not have to be delinquent or in default to qualify for HAMP. (Am. Compl. ¶¶ 61-63).

3.   As a matter of policy, the Wells Fargo representative then incorrectly instructed Mr. Dennis to stop making his mortgage payments for three months in order to become eligible for a loan modification.  He advised Mr. Dennis to call back and reapply for HAMP after missing three mortgage payments.  Mr. Dennis did exactly this.  After missing three mortgage payments, he called Wells Fargo again and applied for HAMP in approximately July of 2009. (Am. Compl. ¶¶ 63-64).

4.   The Defendants suggested and encouraged Mr. Dennis to apply for and participate in HAMP when he inquired about how he might modify his mortgage.  Mr. Dennis followed Wells Fargo's procedures for obtaining a loan modification and applied for HAMP.  (Am. Compl. ¶¶ 65-66).  Mr. Dennis sought all hardship assistance options and/or foreclosure avoidance options that were available to him.  In fact, Mr. Dennis was approved for a HAMP trial period payment plan (TPP) and made twelve TPP payments until he was instructed to stop making payments by Defendants.  (Am. Compl. ¶¶ 70-71).  Defendants failed to follow the HAMP guidelines and deviated from the industry standard. (Am. Compl. ¶¶ 182, 189-191, 194-200).  Reassuring Mr. Dennis that they would not foreclose while they were continuing to review his completed HAMP application, Defendants then wrongfully foreclosed anyway, purchased the property and have now proceeded to evict Mr. Dennis from his home. (Am. Compl. ¶94).

5.   Wells Fargo failed to send adequate notice to Mr. Dennis when denying a loan

modification, even though the lender promised in writing to modify an eligible loan to prevent impending default.

6. In 2008, Wells Fargo accepted $25 billion in funds from the United States Government as part of the Troubled Asset Relief Program ("TARP"), 12 U.S.C. § 5211. Through both a contract with the U.S. Treasury and its status as a servicer for Freddie Mac, Wells Fargo agreed to participate in HAMP -- a program by which they receive incentive payments for providing affordable mortgage loan modifications and other alternatives to foreclosure to eligible borrowers.

7. The HAMP guidelines are, as a matter of law, the industry standard for the residential mortgage servicing industry:

STANDARD INDUSTRY PRACTICE.—The qualified loss mitigation plan guidelines [i.e., HAMP] issued by the Secretary of the Treasury under the Emergency Economic Stabilization Act of 2008 shall constitute **standard industry practice** for purposes of all Federal and State laws.
Helping Families Save Their Homes Act of 2009, Pub. L. No. 111-22 (2009), § 201. (emphasis added).

8. As a participating servicer in HAMP, Wells Fargo, entered into a written agreement with Mr. Dennis for a temporary trial modification. Mr. Dennis complied with this agreement by submitting the litany of required documentation and making twelve months of trial period payments. Despite this, Defendants ignored their contractual obligations to modify his loan permanently and instead induced Mr. Dennis into even further default.

9. Wells Fargo induced the Plaintiff into missing mortgage payments ostensibly to qualify for a HAMP loan modification and TPP without disclosing that it would consider it an instant default and proceed to foreclosure even after the TPP was completed. (Am. Compl. ¶¶ 63-64, 104-105). Wells Fargo failed to follow the HAMP guidelines, failed to safeguard and maintain the documentation submitted with the loan application, falsely advised Mr. Dennis to

stop making his trial period payments and instead make a one-time payment before receiving a new TPP amount, and failed to abide by the terms of the Note and Deed of Trust. (Am. Compl. ¶¶ 72-79, 88, 104, 106). Wells Fargo and Defendant Trustee did not strictly comply with the terms of the pre-acceleration requirement embodied in the Deed of Trust. (Am. Compl. ¶¶ 110 – 114).

## ARGUMENT

In order for the Defendant to prevail in its motion, it must demonstrate that the Mr. Dennis has supplied no set of facts which, taken as true, facially state a plausible claim for relief. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554-55 (2007). While Fed. R. Civ. P. 8(a)(2) simply requires a "short and plain statement of the claim showing that the pleader is entitled to relief," the statement must contain "'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Ashcroft v. Iqbal,* ____ U.S. ____, 129 S.Ct. 1937, 1949 (2009)(quoting *Twombly,* 550 U.S. at 555)(internal citation omitted). In order to determine whether the Defendant prevails, it must overcome the considerable hurdle in "the familiar standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Sumner v. Tucker,* 9 F. Supp. 2d 641, 642 (E.D. Va. 1998). The Rule requires that the facts alleged by the Plaintiff are presumed to be true and the complaint should be dismissed only when "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *White v. Jones,* No. 1:10CV799, 2010 WL 3395695, at *2 (E.D. Va. Aug. 23, 2010) *aff'd,* No. 10-7283, 2010 WL 5439712 (4th Cir. Dec. 29, 2010)(quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

The Defendants' motion to dismiss is entirely premised on their position that a borrower applying for a loan modification under HAMP never completes an application and, even if he did complete an application, compliance with the terms of the TPP automatically puts a borrower in

default so that an ECOA notice is never required.   *See, e.g., Davis v. Citimortgage, Inc.*, 2011 WL 891209 (E.D. Mich. Mar. 11, 2011). In Defendants' view, once they induce a borrower into applying for a loan modification under HAMP, they have no obligation under the ECOA. Nor do they have any obligation under Virginia law to engage in good faith and fair dealing related to their contractual obligations, because they argue that any action they take is naturally an exercise of their contractual right. Finally, Defendants argue they have no obligation to strictly comply with the Note and Deed of Trust. In order for the Defendant to prevail, the Court must accept as true disputed facts, or construe them in favor of the non-movant in violation of Rule 12(b)(6); find that a borrower applying for a HAMP loan modification is not entitled to an ECOA notice; reject the common law and in particular the applicability of the implied covenant of good faith and fair dealing between lender and borrower if a loan modification under HAMP is involved; and then reject the terms of the very contracts encumbering the property in the first place. Defendants want a free pass in every aspect of this case; they claim utterly no obligations to any borrower when HAMP is involved.

## I.   PLAINTIFF'S CAUSES OF ACTION UNDER VIRGINIA LAW ARE NOT EXTINGUISHED BECAUSE THERE IS NO PRIVATE RIGHT OF ACTION UNDER HAMP.

Defendants argue the Amended Complaint should be dismissed in its entirety because it stems from "alleged violations of HAMP guidelines." (Defs' Mem. at 7).[2]   Defendants incorrectly argue that Mr. Dennis is trying to enforce the federal HAMP program, when it is

---

[2] Defendants correctly note that HAMP Supplemental Directive 10-02 does not directly apply to mortgage loans owned by Freddie Mac. (Defs' Mem. at 6, Am. Compl. Ex. 6). However, Freddie Mac Guide Bulletin 2010-17 incorporated by reference certain aspects of HAMP Supplemental Directive 10-02 into Chapter C65 of the Guide, both of which do apply to Freddie Mac. (Am. Compl. ¶ 51-52, Ex. 6-7). It is for this limited purpose that Plaintiff offers this as an exhibit to his Amended Complaint. It should also be noted that while Plaintiff alleges upon information and belief that Freddie Mac is the investor and note holder, if discovery in this case at a future date shows otherwise, then the entirety of Directive 10-02 would be relevant to Plaintiff's claims against Defendants. (Am. Compl. ¶ 27, Ex. 6).

clear on the face of the complaint that he is not. Mr. Dennis acknowledges that a majority of the courts have decided that the statutes creating HAMP do not provide homeowners with a private cause of action.[3]

Defendants insist that the Mr. Dennis' references to HAMP in his Amended Complaint and prayer for relief require that this case be dismissed. (Defs' Mem. at 7). Defendants rely on a stream of inapposite case law, void of analysis related to the common law causes of action. Defendants' argument relies heavily on an order from *Pennington v. PNC.* (Def's Mem. at 6-7). In *Pennington*, the homeowner moved in state court to enforce a contract amongst the defendants under a third party beneficiary theory. However, the *Pennington* case is vastly different than this case because Mr. Dennis is not attempting to enforce a contract he is not a party to under a third party beneficiary theory. [4]

Plaintiff asserts that the Defendants' act of failing to follow HAMP when it was the applicable law and their misrepresentations that they would follow it satisfies some of the elements for the claims such as the breach of the implied covenant of good faith and fair dealing, breach of contract, unclean hands, negligence, and presents an issue for declaratory judgment. It

---

[3] A private right of action is less likely to exist precisely when common law remedies are available. *Brown v. The Virginia Opera Ass'n., Inc.*, 556 F. Supp. 246, 247 (E.D. VA 1982) (citing *Cort v. Ash,* 442 U.S. 66, 78 (1975) (expressing a four factor test for determining whether an applied right of action exists); *Mutlu v. Jetblue Airways Corp.*, 2009 U.S. Dist. LEXIS 60164 No. 08-CIV-4887 (LAP) at 6 (S.D.N.Y. Mar. 31, 2009) (stating *Cort v. Ash,* 442 U.S. 66 (1975) has been partially overruled in that the four weighing factors are not equal; the central factor is congressional intent.)

[4] *Pennington v. PNC Mortgage, et al.*, No. 2:10cv361 (Doumar, J.) (E.D. Va. Aug. 11, 2010), appears procedurally unusual. On July 23, 2010, PNC removed to federal court as a federal question because the Plaintiff alleged HAMP violations. *Id.* (Docket #1). On August 10, 2010, PNC filed motions to dismiss. *Id.* (Docket ##4, 6, 8, 11). The court dismissed the HAMP claims the very next day without the benefit of briefing from the Plaintiff or allowing time for the Plaintiff to amend the Complaint under Fed. R. Civ. P. 15(a)(1)(B), and remanded the remaining state law claims back to state court. *Id.* (Docket ## 13-15). The court found that the Plaintiffs failed to allege that they were parties to or in privity with Fannie Mae, and thus their HAMP-related claims must be dismissed.

also provides evidence of willfulness. While there are necessary references to HAMP, it is not an attempt to enforce HAMP. The difference is not subtle, it is decisive.

Moreover, Virginia law states that a statutory remedy does not preempt common law remedies. *See e.g. Chaffinch v. The Chesapeake & Potomac Telephone Co. of Virginia, Inc.* 227 Va. 68, 72-73, 313 S.E. 2d 376-76 (1984) (holding "a statutory remedy does not preempt common law remedies against a non-sovereign entity vested with the power of eminent domain unless the statute, expressly or by necessary implication so provides.") Therefore, the denial of a private right of action in a statute does not preclude Plaintiff from enforcing his common law claims. See, e.g., *Sanders v. UDR, Inc.*, 2010 U.S. Dist. LEXIS 106567, No. 3:10-CV-459 (E.D. Va. Oct. 4, 2010); *Speleos v. BAC Home Loans Servicing, L.P.*, 2010 US Dist. LEXIS 132111 2010 WL 5174510 at *6 (D. Mass. Dec. 14, 2010)(holding that HAMP does not allow for a private right of action but, "[a] claim for negligence based on a statutory or regulatory violation can survive even where there is no private cause of action under that statute or regulation"); *Cruz v. Hacienda Assocs., LLC* (In re Cruz), No. 11-04006, 2011 Bankr. LEXIS 259 **6, 10 (Bankr.D. Mass. Jan. 26, 2011)(agreeing with *Speleos* that a foreclosure sale while a HAMP was pending was a fiduciary breach).

The *Speleos* court noted that even if the modification was denied eight days prior to the scheduled sale, "the plaintiff was not given written notice of the denial nor was he offered other foreclosure mitigation options as required under HAMP guidelines. . . ." *Id.* at *10. The plaintiff argued that by scheduling a foreclosure sale while the homeowner's loan modification request was pending, the servicer breached its duty to act in good faith and with reasonable diligence. The bankruptcy court agreed relying on *Speleos*. *Id.* at *9 (citing *Speleos*, 2010 US Dist. LEXIS 132111 at *6).

9

## II.     THE COMPLAINT ALLEGES A PLAUSIBLE CLAIM UNDER THE ECOA.

Defendants fail to apply the most axiomatic factor in arguing a motion to dismiss, it must take the allegations in the complaint as true. The first step in analyzing whether the Plaintiff has set forth facts that state a *prima facie* case under the ECOA is to look to the plain language of the statute itself. *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997).[5]

The statute is clear on its face. To prevail on an ECOA claim under §1691(d), the Plaintiffs must prove the following elements: (1) Wells Fargo is a creditor, (2) Plaintiff is a credit applicant, (3) Wells Fargo took adverse action with respect to Plaintiff's credit application, and (4) Wells Fargo failed to provide Plaintiff with an ECOA-compliant statement of reasons for its adverse action. *Stoyanovich v. Fine Art Capital, LLC,* No. 06 Civ. 13158, 2007 WL 2363656, at *2 (S.D.N.Y. Aug. 17, 2007) (citing *Madrigal v. Kline Oldsmobile, Inc.,*423 F.3d 819, 822 (8th Cir.2005)); *accord Diaz v. Va. Hous. Dev. Auth.*, 117 F.Supp.2d 500, 504 (E.D. Va. 2000)(explaining that there is no Fourth Circuit authority directly on point, thus the analysis begins with the plain language of the statute, citing 15 U.S.C. §1691(d)(1)-(3); Va. Code Ann. § 59.1-21.21:1(d)(1)-(3); *see* 12 C.F.R. § 202.9(a)(1)-(2)).

Not only is the statute clear that the ECOA is violated when a creditor fails to send to a consumer adequate notice of an adverse action, it mandates that creditors notify applicants of the specific reasons the action was taken. *Id.* at 504. (citing 12 C.F.R. § 202.9(a)(1)-(2), which

---

5 The cause of action in the Amended Complaint is based on Wells Fargo's failure to provide an adequate adverse action notice in violation of §1691(d) of the ECOA, which provides: (d)(1)  Within thirty days (or such longer reasonable time as specified in regulations of the Board for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application. (2)  Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by-- (A) providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or (B) giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the persons or office from which such statement may be obtained. Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request.

details the two ways a creditor may discharge its duty to provide an adverse action notice to the consumer). The ECOA broadly defines "adverse action" to mean the denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or substantially the terms requested. *Id.*

The Federal Reserve Board promulgated regulations that further define "adverse action," specifically excluding certain transactions from the definition of adverse action, none of which are present in this case. *See* 12 C.F.R. § 202.2(c); *see generally*, 12 C.F.R. § 202.1-17 (containing Regulation B, the regulations pertaining to the duty of creditors under the ECOA and the Consumer Credit Protection Act 15 U.S.C. §1601, *et seq.*).

Section 1691(b) and Regulation B have been successfully utilized, interpreted and applied in the courts since 1976.[6] It is inaccurate for Wells Fargo to argue that the Complaint fails to allege a completed application and an adverse action where it is replete with supportable facts regarding Wells Fargo's scheme to induce Mr. Dennis and other borrowers who completed applications for HAMP modifications into delinquency and default by requiring him to miss his mortgage payments. Furthermore, Wells Fargo unilaterally rescinded TPPs, lost borrower documentation and refused to approve the extension of credit in the form of a new loan. (Am. Compl. ¶¶ 45, 54, 60-63, 66-67, 70-73, 113-119).

The Plaintiff consistently alleges facts demonstrating he submitted completed applications for which no adequate adverse action notice was provided. (Am. Compl. ¶ 113-119). In addition, it is clear that he has alleged supporting facts: "in order to qualify for HAMP, Mr. Dennis did exactly as Wells Fargo instructed" with respect to his 2009 application, which itself is

---

[6] ECOA was enacted in 1974 and amended in 1976 to include the adverse action notice provision of § 1691(d) "as a strong, necessary adjunct to the antidiscrimination purpose of the legislation." *Williams v. MBNA Am. Bank, N.A.*, 538 F. Supp. 2d 1015, (E.D. Mich. 2008)(quoting *Fischl v. Gen'l Motors Acceptance Corp.*, 708 F.2d 143, 146 (5th Cir. 1983).

sufficient to withstand dismissal. (Am. Compl. ¶ 72). Thereafter, Mr. Dennis "reapplied" for successive HAMP applications even as he was continuing to make payments under the 2009 TPP. (Am. Compl. ¶¶ 71-76, 79-89).

Even if the allegations concerning the applications lack the precision Defendant would like, it is properly pled at this stage of litigation because Wells Fargo acted on the Plaintiff's application by sending a denial letter. (Am. Compl. ¶ 91). When a creditor makes a decision to decline a request for credit based on information that it received through an inquiry from a prospective borrower, that inquiry constitutes an "application" for credit for purposes of ECOA. *Stoyanovich v. Fine Art Capital, LLC,* No. 06 Civ. 13158, 2007 WL 2363656, at *5 (S.D.N.Y. Aug. 17, 2007)(quoting *Treadway v. Gateway Chevrolet Oldsmobile, Inc.,* 362 F.3d 971, 981 (7th Cir.2004) "[E]ven if it was not an application in the beginning, when [creditor] declined [applicant's] request, it became an application and creditor was required to comply with [ECOA's notice provisions].").

Although nowhere in §1691(d) is it mentioned that a Plaintiff must allege that he or she is current on a mortgage in order to be entitled to the adverse action notice required by the statute, the Plaintiff nonetheless alleged that he paid his mortgage in full every month up to and including the date he first contacted Wells Fargo to learn about his options for refinancing or loan modification. (Am. Compl. ¶¶ 62-69). The allegations are that to the extent Mr. Dennis defaulted, it only occurred as a direct result of Wells Fargo inducing him to do so as a prerequisite for a HAMP loan.

Defendant argues that the Plaintiff (1) "concedes that Wells Fargo considered his HAMP request withdrawn due to missing, supporting documents required for HAMP application process"; (2) it is undisputed that Defendant was in default on his existing mortgage when Wells

Fargo denied his request for a mortgage loan modification. (Def.'s Mem. at 9-10). These statements are misrepresentations of the context and actual meaning of such allegations. For instance, Mr. Dennis received a letter from Wells Fargo that it was considering his application withdrawn despite the fact that he had complied with every single condition imposed by Wells Fargo. When read in context, it is apparent that Mr. Dennis isn't conceding that the application was withdrawn, only that Wells Fargo sent him such a letter. Quite to the contrary, Mr. Dennis alleges that he supplied every single document required and that it was Wells Fargo that lost the documentation. (Am. Compl. ¶¶ 101-102). Additionally, Mr. Dennis never admits that he was in default through any fault of his own, but in fact alleged that he was current on his mortgage, and that he would have remained current but for Wells Fargo's misrepresentation. (Am. Compl. ¶¶ 62-63).

Furthermore, Defendants state that "Plaintiff failed to comply with the stated conditions within the relevant time period," rendering his application incomplete. (Defs' Mem. at 10). This is an assertion of fact by the Defendant that is clearly disputed throughout the Amended Complaint, the Plaintiff alleges that he timely provided every document required by Wells Fargo, many times over. (Am. Compl. ¶¶ 66, 69, 71-71, 75, 87-89, 95, 100, 102). The main theme that permeates every fact alleged is that Wells Fargo misrepresented the requirements for a HAMP application in order to induce the Plaintiff into defaulting on an otherwise current loan. (Am. Compl. ¶¶61-63, 122, 144-146, 206, 209). Defendant has its version of the facts, which it may argue in the appropriate motion or at trial. However, at this stage it must accept as true all the facts that the Plaintiff alleges and the reasonable inferences that can be drawn therefrom.

The allegations make clear that the reason for denial supplied by the Defendant in the adverse action notices that it did send, first that he was being denied due to income and second

13

that the Plaintiff failed to submit all requested documents, are false reasons. (Am. Compl. ¶¶ 91-92, 101, 210-211, 240). The Defendant's action on the Plaintiff's 2009 application demonstrates it considered the application to be complete and took adverse action when it sent him a denial. (Am. Compl. ¶91). What Defendant's reasons were and what it did with the documents and information supplied by the Plaintiff in support of his application are facts that the Plaintiff is entitled to discover in this litigation.

A recent case in the Northern District of Illinois applied *Treadway* and further discussed this particular type of ECOA adverse action triggered by a HAMP application. *Boyd v. U.S. Bank, N.A.,* No. 1:10CV3367, 2011 WL 1374986, at *8(N.D. Ill. April 12, 2011)(finding that even a phone call suffices as a completed application under 12 C.F.R. § 202.2(f) and Supplemental Directive 09-01, at least at the motion to dismiss stage); *accor, Coulibaly v. J.P. Morgan Chase Bank, N.A.,* No. DKC 10-3517, 2011 WL 3476994, at *7-8 (D. Md. Aug. 8, 2011)(holding that simple allegations that a plaintiff applied for a loan "are sufficient at the motion to dismiss stage.")

In *Boyd*, the court's decision focused on the substance of the application process. The method of obtaining the application was not the dispositive question but, rather, whether the information gathered by the lender sufficient to act on the application. In this case, it is clear that the Plaintiff provided information practically *ad infinitum*, sufficient for the lender to act on that information, for example, by approving him for a TPP and sending notices that it was refusing to modify the loan.

Despite a continuing, dynamic, virtually unending, unknowable application process, the Amended Complaint sufficiently alleges that Mr. Dennis completed at least two applications, that Wells Fargo acted on the applications, thus rendering them completed applications, therefore

the Defendant was still required to send an ECOA notice.[7]

Because default status triggers one of the exceptions to the definition of adverse action, inducing a borrower into default by falsely telling him it is a HAMP requirement must appear to lenders to be a promising way to avoid their ECOA notice duty. The possibility that Wells Fargo might assert a defense or exemption from the ECOA's adverse action notice requirements because of alleged pre-application default is not a matter that can be resolved at this stage of the litigation or upon the face of the complaint. "Lack of default" is not an express element of a claim under either 15 U.S.C. §1681(d) or the VECOA, now at Va. Code. Ann. §§ 6.2-502, 503 (2010).

### The Plaintiff properly seeks recovery under both the ECOA and VECOA

In a footnote, the Defendant notes that Plaintiff cannot seek money damages under both VECOA and ECOA claims, which is correct. (Defs' Mem. at 8, n. 5). Wells Fargo continues use of this footnote even though it acknowledges that the Plaintiff "appears to seek declaratory and injunctive relief pursuant to ECOA and punitive damages pursuant to VECOA" which is correct. *Id.* (internal citations omitted). The Plaintiff has alleged violations of both the VECOA and ECOA, but has demanded money damages only under the VECOA and injunctive relief

---

7 Even if Wells Fargo continues to assert its claim that the Plaintiff never completed an application, the ECOA requires creditors to provide consumers with written notice that their applications were incomplete and instructions on how to cure deficiencies. (Regulation B, 12 C.F.R. §202.9(a)(1)(ii), §202.9(c)(1)(i) & (ii), §202.9(c)(2)). This provision of the ECOA makes it even more clear that a creditor cannot shirk its notice responsibility by doing what Wells Fargo did here: set up an unending cycle of requests for documentation to avoid considering a consumer's credit application to be complete, but either way failing to communicate the real reasons it is denying the loan. The Complaint adequately sets out the facts putting the Defendant on notice that it is accused of failing to provide adequate, true and complete notices to Mr. Dennis, to whom it denied modifications despite compliance and completion of applications and eligibility for the HAMP program. The Complaint adequately alleges that the Plaintiff was facing financial hardship, but was still current on his mortgage until he reached out to his lender, Wells Fargo, that instructed him to default on his mortgage payments.

under the ECOA.[8] The Plaintiff seeks remedies authorized under both the ECOA and VECOA, and thus to the extent that the footnote is deemed to be part of Defendant's motion to dismiss based on this argument, it should be denied.

## III. PLAINTIFF HAS ALLEGED FACTS STATING A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

In order to state a claim for a breach of the covenant of good faith and fair dealing, a plaintiff need not allege a breach of a written term of the underlying contract as the Defendants argue. *Acuna v. Chase Home Fin., LLC*, No. 3:10CV905, 2011 WL 1883089, at *6 (E.D.Va. May 17, 2011). A claim is established when the plaintiff pleads (1) a contractual relationship between the parties; and (2) breach of the implied covenant. *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009)(citing *Charles E Brauer Co. v. NationsBank of Va., N.A.*, 466 S.E. 2d 382, 386 (1996)).

Defendants have avoided citation to the most relevant recent case decided by the Chief Judge of this Court which is directly on point and instead misstates the law and the facts relating to this case.[9] *Acuna*, 2011 WL 1883089, at *6. Defendants don't even rely on competing authority, but instead rely on their version of the facts that allow them to claim they were entitled to take all the actions against the Plaintiff that he has alleged in the complaint. Indeed, "it is a basic principle of contract law in Virginia, as elsewhere, that although the duty of good faith does not prevent a party from exercising its explicit contractual rights, a party may not exercise the contractual discretion in bad faith, even when such discretion is vested solely in that party."

---

[8] Under the VECOA, a Plaintiff must elect whether he or she will seek recovery of monetary damages under the State or Federal statutes. Va. Code Ann. § 6.2-512. Accordingly, the substantive text of the Complaint under the Federal ECOA count, asserts only a claim for "declaratory and injunctive relief." (Compl. ¶ 119). Plaintiff seeks no money damages for violation of the ECOA. (Compl. ¶¶ 118-119). The Plaintiff does, however, seek money damages, including punitive damages, for violation of the VECOA under Va. Code Ann. § 6.2-512, where both equitable and legal remedies are available. (Compl. ¶ 118).

[9] Defendant relies on *Acuna* elsewhere in its brief to support its motion to dismiss the constructive fraud claim. (Defs' Mem. at 23).

16

*Va. Vermiculite, Ltd., v. W.R. Grace & Co.*, 156 F.3d 535, 541-542 (4th Cir. 1998). The Amended Complaint specifically alleges that the Defendants were not entitled to take any of the actions they took against Mr. Dennis causing a default and foreclosure when it was the very thing he sought to avoid by contacting them.

The breach of the implied covenant of good faith and fair dealing arises from the duties owed by the parties to one another and must be based on an underlying contract, which in this case is that very Deed of Trust. *Acuna*, 2011 WL 1883089, at *6. Mr. Dennis has not alleged that Wells Fargo breached the implied covenant by failing to modify the loan, but instead Wells Fargo's breach began by deceiving Mr. Dennis into default by falsely instructing him, among other things, that he must be in default on his mortgage in order to be considered for a modification. (Am. Compl. ¶¶ 61-64). This court has specifically held that a plaintiff such as Mr. Dennis alleges a breach of the implied covenant of good faith and fair dealing when the Defendant induces a borrower into default by telling him it increases his chances of getting a loan modification, falsely assures the borrower about the status of the modification, assures the borrower that the home would not be foreclosed on, and also by failing to follow HAMP guidelines. *Acuna*, 2011 WL 1883089, at *6. In this case, Mr. Dennis alleged that Wells Fargo not only told him default would increase his chances of being approved for a modification, but that going into default was a prerequisite. (Am. Compl. ¶¶ 61-64). The facts pled in the Amended Complaint specifically fulfill all that is required in order to state a claim.

Wells Fargo argues that a claim for breach of the implied covenant requires an allegation of bad faith, not simply an unfavorable outcome. (Defs' Mem. at 12). Plaintiff has not alleged that Wells Fargo's actions were simply an arbitrary or unfavorable decision to deny a modification, but were dishonest intentional acts. (Am. Compl. ¶¶ 63-66; 100-104; 122-124).

The facts alleged do not describe a garden-variety borrower default, but instead affirmative and deceptive steps taken by Wells Fargo to induce the borrower into applying for a loan modification to provide the pretext for foreclosure. (Am. Compl. ¶¶ 60- 70; 91-101). Plaintiff has further alleged that Wells Fargo referred him to a "special high level group" assigned to work out difficult cases (Am. Compl. ¶ 93); assured him his home would not be foreclosed on while he was being reviewed for a modification (Am. Compl. ¶ 96); and that he should continue making Trial Period Plan payments for approximately a year (Am. Compl. ¶ 71). In addition, contrary to the Defendants' reading of the Amended Complaint and the law on the implied covenant of good faith and fair dealing, Mr. Dennis has not only alleged a breach of the implied covenant, but also a breach of the express terms of the underlying agreement embodied in the Deed of Trust (Count Three). (Am. Compl. ¶¶ 131-137; but see Defs' Mem. at 11).

## IV.   PLAINTIFF HAS STATED A CLAIM FOR A BREACH OF CONTRACT AGAINST DEFENDANTS.

In Virginia, a deed of trust is a contractual obligation of the parties. The preamble to Va. Code Ann. § 55-59 states that "every deed of trust to secure debts or indemnify sureties in the nature of a contract and shall be construed according to its terms." Thus, a lender's breach of the terms of a deed of trust gives rise to a claim for breach of contract. In *Bayview Loan Servicing v. Simmons*, the Supreme Court of Virginia applied the principles of contract construction to the provisions of a deed of trust. 654 S.E. 2d 898, 901 (Va. 2008). The terms of the DOT are subject to applicable law, defined by the DOT to include federal law. (Am. Compl. ¶¶ 37-39, 41, 132, Ex. 1). According to paragraph 22 of the DOT, if a default is not cured, the Lender may invoke the power of sale and other remedies permitted by Applicable Law.[10]

---

[10] Pursuant to federal law, HAMP is the industry standard for the residential mortgage servicing industry (Am. Compl. ¶ 6). As federal law, the industry standard meets the definition of applicable law in the DOT. A particularly

The Amended Complaint alleges that a default by the homeowner does not automatically entitle the mortgage holder to foreclose. (Am. Compl. ¶ 92.) Reading the terms of the DOT with the applicable law, the Amended Complaint alleges that upon default the remedy Defendants Freddie Mac and Wells Fargo chose was a HAMP evaluation. Consequently, the Amended Complaint alleges Defendants right to foreclose is not triggered until a HAMP analysis had been completed and the homeowner determined ineligible. (Am. Compl. ¶¶ 80,82, 87-89). Similarly, Mr. Dennis' right to reinstate does not expire until his application for HAMP has been reviewed and denied. Since Defendants did not review his financial information and conduct a full HAMP evaluation, Defendants' right to foreclose was never triggered and Freddie Mac breached the DOT by foreclosing on the Property. (Am. Compl. ¶¶ 95-105).

### A. The notice of default did not comply with the Deed of Trust.

The Deed of Trust requires that prior to acceleration of the mortgage note the Lender shall give notice to borrower which shall specify four specific requirements. (Am. Compl. ¶ 132, Ex. 1 ¶ 22). Mr. Dennis has alleged that this notice failed to provide him with the correct amount of his alleged default as is required by the Deed of Trust. (Am. Compl. ¶¶ 133, 134). Defendants argue that the notice of default met the DOT notice requirement giving Mr. Dennis 30 days to cure the default even though the notice of default was dated November 28, 2010, which was a Sunday[11]. The notice of default was not mailed by first class mail on the date of the notice, as it is well established that the United States Postal Service does not operate on Sundays. Because of this impossibility, the Defendants' argument that it provided Mr. Dennis with the required 30 days to cure the default and fully complied with the DOT fails.

---

relevant command of HAMP is that it does not permit a foreclosure until an applicant is determined to be ineligible and is notified of that evaluation.

[11] *See* http://www.timeanddate.com/calendar/?year=2010

The notices of default are a condition precedent to a foreclosure sale. In *Bayview*, the Virginia Supreme Court held that "[b]ecause Bayview did not comply with a condition precedent under the Deed of Trust...Bayview has not acquired the right to accelerate payment under the terms of the Deed of Trust." 654 S.E. 2d 898, 901; *Washington v. CitiMortgage, Inc.,* 2011 WL 1871228, at \*8, \*17-19 (denial of the motion to dismiss because the plaintiffs alleged that they did not receive the pre-acceleration notice that was required).[12] Defendants seem to ask this court to adopt a "substantial compliance" standard to the DOT default notice requirement, despite state and federal court precedent directly on point. *Bayview*, 654 S.E. 2d 898, 901; *Washington*, 2011 WL 1871228, at \*8, \*17-19. The pre-acceleration notice is not discretionary. Every requirement imposes a duty on the lender with the language, "shall." Virginia law is well settled that a contract will be construed more strictly against the party that prepared it. *Winn v. Aleda Constr. Co.,* 315 S.E.2d 193 (Va. 1984). The inaccurate amount of the default and the lack of a 30-day timeframe in Defendants' notices of default mean that Defendants were not entitled to foreclosure because they did not comply with the conditions precedent under the Deed of Trust.

Defendants also inaccurately argue that Mr. Dennis has not attempted to cure or make payments since the acceleration letter. (Def's Mem. at 14). However, his Amended Complaint is replete with allegations showing Mr. Dennis' attempts to cure and make payments even after the acceleration letter. (Am. Compl. ¶¶ 70-71, 88, 89, 93-101, 103, Ex. 12).

### B. Plaintiff has stated a valid claim for breach of the Deed of Trust by Defendant Trustee.

---

[12] Unlike this case, the plaintiffs did not allege any deficiency in the pre-acceleration notice. Dismissal was properly rejected because it required an examination of the documents which were not attached to the Complaint. *Id* at \*18.

In his Amended Complaint, Plaintiff properly alleges that Defendant Trustee must strictly comply with the Deed of Trust in all respects and that it failed to do so. (Am. Compl. ¶¶ 152, 154, 159-160). Plaintiff alleges that because the requirements of the Deed of Trust as enumerated above were not satisfied, the power of sale was never triggered and the Trustee was without authority to proceed with the sale. (Am. Compl. ¶¶ 159-160). Defendants again mischaracterize Plaintiff's allegations as an attempt to enforce a private cause of action under HAMP. This is simply incorrect. The Plaintiff's allegation that HAMP is part of the applicable law under the DOT is consistent with this court's recent denial of a motion to dismiss a similar breach of contract claim when the lender failed to comply with the terms of the deed of trust. *Najdi v. BAC Home Loan Serv. L.P.*, No. 1:10CV1466-LO (E.D. Va. March 25, 2011)(Docket ## 21-22)(denying Defendant's motion to dismiss the Amended Complaint).

### C. The Plaintiff is entitled to damages for emotional distress as a result of Defendants' Breach of Contract.

Plaintiff's claim of damages for emotional distress should not be dismissed because the plaintiff is not required to plead emotional distress in federal court with the degree of specificity required under Virginia law.[13] In federal court, the elements for a claim of emotional distress without bodily injury need not be pled to the same level of specificity but rather must only comport with the requirements of Fed. R. Civ. P. 8. *Perk v. Worden*, 475 F. Supp. 2d 565, 571 (E.D. Va. 2007)(a reasonable jury could have found the actions met the standard and sleep disturbance and stress were adequately severe); accord, *Hatfill v. The New York Times Company*, 416 F.3d 320, 337 (4th Cir. Va. 2005)(the court found "these allegations are sufficient under Fed.

---

[13] Defendants correctly state the elements that need to be shown for a claim of damages for emotional distress with no physical injury under Virginia law as stated in *Womack v. Eldridge.* 210 S.E. 2d 145, 148 (Va. 1974) (Def's Mem. at 15). The four separate elements and supporting facts must be alleged and pled with specificity in order to establish a claim, and the pleading may not be merely conclusory. *Ely v. Whitlock*, 385 S.E. 2d 893, 897 (Va. 1989); *Jordan v. Shands*, 500 S.E 2d 215, 219 (Va. 1998).

R. Civ. P. 8 to give The Times 'fair notice of what [Hatfill's] claim is and the grounds upon which it rests') (quoting *Swierkiewicz*, 534 U.S. at 512, citing *Conley*, 355 U.S. at 47); *Davis v. ABM AMRO Mortgage Group*, No. 06-07126, 2007(following *Perk v. Worden* that "relatively simple allegations of severe emotional distress are sufficient.")

The Plaintiff is entitled to damages for emotional distress as contract damages, even if damages are not available for the type of contract involved, because of the nature of the *breach*. *Moorehead v. State Fame Fire & Casualty Company* (adopting approach of *Wise v. General Motors Corp.*, 588 F. Supp. 1207 (W.D. Va. 1984), adopting the Restatement a plaintiff may recover emotional distress damages in contract actions where the claim involves bodily injury or the breach is of the type that severe emotional damage would likely result. *Restatement (Second) of Contracts* § 353.

In the instant case, the action for damages for emotional distress is based both upon the Defendants' breach of the Deed of Trust and the Defendant Trustee's breach of fiduciary duty. Whether the Deed of Trust is a contract associated with resulting severe emotional damage or not, a claim of damages for emotional distress will still lie as result of the *breach* of that contract. *Moorehead v. State Farm Fire & Cas. Co.*, 123 F. Supp. 2d at 1004, 1007 (W.D. Va. 2000). Virginia law allows emotional distress damages in contract cases as the Restatement approach does not preclude the consideration of breach of contract as likely to afford damages at trial. *Id*.

## V. PLAINTIFF HAS STATED A CLAIM FOR UNCLEAN HANDS.

Mr. Dennis asserts Unclean Hands against the Defendants. (Am. Compl. ¶¶138-150). Foreclosures are equitable in nature making them an equitable remedy subject to equitable defenses and maxims. (*Id.* ¶ 139); *See BFP V. Resolution Trust Corp.*, 511 U.S. 531, 541 (1994.) Furthermore, Defendant Freddie Mac seeks to obtain possession of the home based on

the Trustee's Deed in Virginia's General District Court, which does not have jurisdiction to hear challenges to title. (Am. Compl. ¶ 111). This count is a Virginia common law equitable claim and maxim that precludes Defendants from benefiting from their inequitable conduct.[14] The application of the doctrine is based upon the facts of each particular case and therefore should be left to the discretion of the fact finder.

Defendants' misrepresentations to Mr. Dennis discussed at length herein turned out to be false and wrongfully lured Mr. Dennis into forbearing his rights to seek other foreclosure alternative options and therefore constitutes "unclean hands" precluding foreclosure. (Am. Compl. ¶¶ 147, 148). Since the foreclosure was a product of unclean hands, the sale should be set aside.

Defendants cite *Parker v. Westat, Inc.,* 301 F. Supp. 2d 537, 544 (E.D. Va. 2004) which did not involve a claim for unclean hands, only an estoppel cause of action precluded by a Workers Compensation claim and a previous award for the same injuries. The passage quoted by Defendants refers to the estoppel claim only, not unclean hands. Defendants' attempt to substitute an estoppel claim for Plaintiff's unclean hands claim is erroneous. Defendants also rely on another distinguishable case, *Thomas v. Wells Fargo Bank, N.A.,* No. 4:10-cv-00060, 2011 U.S. Dist. LEXIS 52399, at *6 (W.D. Va. May 17, 2011), where a *pro se* Plaintiff had at most a bare bones recitation of the elements without facts in support, which were dismissed. To the contrary, Mr. Dennis has clearly provided sufficient factual allegations to support his claim for unclean hands in his Amended Complaint as required by Fed. R. Civ. P. 8. (Am. Compl.¶¶ 63, 67, 70, 79-82, 86, 95-101, 144, 147-149).

---

[14] Under the Unclean Hands Doctrine: The complainant seeking equitable relief must not himself have been guilty of any inequitable or wrongful conduct with respect to the transaction or subject matter sued on. Equity will not give relief to one seeking to restrain or enjoin a tortuous act where he has himself been guilty of fraud, illegality, tortuous conduct or the like in respect of the same matter in litigation. *Cline v. Berg,* 273 Va. 142, 147 (2007) (quoting *Richards v. Mussleman,* 267 S.E.2d 164, 166 (1980)).

Although pled affirmatively in this case, Plaintiff's unclean hands claim is also part of his claim for declaratory and injunctive relief to show that Defendants' claim to the property is barred by its inequitable conduct. This count is premised on Defendants misrepresentations and conduct and an equitable doctrine of Virginia common law and should not be dismissed.

## VI.    PLAINTIFF HAS STATED A CLAIM FOR A BREACH OF FIDUCIARY DUTY AGAINST SAMUEL I. WHITE.

In Virginia, every trustee on a deed of trust is a fiduciary, owing a duty to both the borrower and the noteholder and must act impartially between them. *Whitlow v. Mountain Trust Bank*, 207 S.E.2d 837, 840 (Va. 1974).   Virginia law is clear on the duties of such a fiduciary: "[t]he trustee is a neutral party and owes the duty of independent judgment and discretion, free from a special loyalty to either the lien creditors or the debtor." *Frye v. Racey*, Chancery No. 1626, 1981 WL 180475, at *2 (Va. Cir. 1981)(unpublished)(relying on 640 Minor on Real Property 839 (Ribble's ed)).   Therefore, a trustee "must act fairly and impartially toward both parties to the instrument and not exclusively in the interest of either." *Id.* (quoting 20 Glenn on Mortgages 126). The duties of a trustee as a neutral and fiduciary are duties that are part of every trust agreement. *Whitlow v. Mountain Trust Bank*, 207 S.E.2d at 840; *Turk v. Clark*, 193 Va. 774 (1952); *Powell v. Adams*, 179 Va. 170, 174 (1942); *Cereo v. Schmidheiser*, 114 F.3d 1175 (4th Cir. 1997)(unpublished).   In this case, the allegations of the complaint demonstrate that SIW acted wholly according to the interest of the noteholder to the utter exclusion of the rights of the borrower, thus demonstrating its loyalty to the noteholder and abandoning its duties of independent judgment and discretion.

In order for Virginia's non-judicial foreclosure scheme to work, the trustee must exercise its neutrality, discretion and judgment as fiduciary to both parties. *Smith v. Credico Indus. Loan Co.*, 362 S.E.2d 735, 737 (Va. 1987)(citing *Whitlow* and *Smith v. Miller*, 37 S.E. 10 (Va. 1900),

explaining that the principle that a trustee is a fiduciary "based upon broad principles of public policy" and not limited to the facts of a particular case); *accord, Bremer v. Bitner*, Chancery No.143320, 1997 WL 1070467, at *3 (Va. Cir. Dec. 4, 1997)(unpublished). A fiduciary must never place himself in a position of conflict with one of the parties to the trust instrument. *Id.; Bremer v. Bitner*, , 1997 WL 1070467, at *3 (quoting *Powell v. Adams*, 179 Va. 170, 174 (1942), requiring that a trustee must "act toward each with perfect fairness and impartiality.") When the result of the trustee's actions are grossly unfair to the borrower, the trustee's obligations are not fulfilled, the sale must be set aside. *Res. Trust Corp. v. Maplewood Inv.*, 31 F.3d 1276 (4th Cir. 1994).

While the trustee may not have an enumerated duty of "due diligence" unless expressly provided in the trust instrument, due diligence may be required in the discharge of his duty to remain impartial and exercise discretion and judgment independently in a foreclosure. *See, Horvath v. Bank of New York*, No. 1:09CV1129, 2010 WL 538039, at *1-2 (E.D.Va. Jan. 29, 2010), aff'd 641 F.3d 517 (4th Cir. 2011)(explaining that the plaintiff had not demonstrated that "due diligence" was an express term in the contract *nor had he alleged facts that demonstrated the trustee acted without impartiality*)(emphasis added). Finally, the Deed of Trust specifically provides that the trustee is obligated to conform with all applicable state and federal laws and regulations, including case law.

Because Virginia law is clear that the duties of every trustee are to act as fiduciary to both sides with perfect impartiality, exercising independent judgment and discretion in the discharge of his duties, Plaintiff seeks to impose no duty on the trustee other than the fiduciary duty that is firmly established as a broad policy principle and a part of every deed of trust. Plaintiff has pled facts specifically demonstrating that the trustee acted in the interest of the noteholder to the

25

exclusion of the debtor, despite the fact that SIW had specific, relevant information that foreclosure was improper yet did nothing. It is axiomatic, when a party is vested with a duty to exercise discretion and judgment, he must do so affirmatively and actively. In this case, the facts are that the trustee failed to verify the bankruptcy discharge despite specific knowledge, such delay caused termination of the TPP and added additional charges to his mortgage. (Am. Compl. ¶¶ 73, 76-77, 167). Furthermore, the trustee did not verify that any of the conditions that authorized the foreclosure sale, including that the loan was in default, that the power of sale clause had been triggered, that an applicable law, HAMP, had been complied with, and upon learning that the lender was reviewing Mr. Dennis' HAMP application, failure to suspend or undo the foreclosure sale. (Am. Compl. ¶¶ 166-178).

In this case, it was not difficult for the trustee to gather information necessary to exercise his fiduciary obligations because Mr. Dennis supplied regular, relevant and sufficient information that the foreclosure should not take place. (Am. Compl. ¶¶ 73-77). These facts demonstrate that despite specific knowledge to the contrary, the trustee violated its obligation of perfect impartiality and its duty to exercise independent judgment and discretion. Thus, Plaintiff has clearly stated a claim for a breach of the fiduciary duty owed by SIW to Mr. Dennis and the claim should not be dismissed.

## VII.   PLAINTIFF HAS STATED A CLAIM FOR NEGLIGENCE.

"In order to sustain a cause of action based on negligence under Virginia law, a plaintiff must establish 'the existence of a legal duty, a breach of the duty, and proximate causation resulting in damages.'" *Dur v. W. Branch Diesel*, 240 Fed. Appx. 568, 571 (4th Cir. 2007) (quoting *Atrium Unit Owners Ass'n v. King*, 266 Va. 288, 585 S.E.2d 545, 548 (2003)). The Helping Families Save Their Homes Act of 2009 created a duty of care when it made HAMP the

industry standard. (Am. Compl. ¶ 182). Additionally, by making an affirmative act Defendants owed a duty of care to Plaintiff.[15] Mr. Dennis alleges that Defendants encouraged and solicited him to apply for HAMP, instructed him to miss three mortgage payments in order to qualify for HAMP thereby inducing him to default and said they would review his financial information to see if they could "help" him. (Am. Compl. ¶¶ 63, 72, 79-82). These representations constituted an affirmative act creating a duty of care to Mr. Dennis when performing a HAMP analysis. The Amended Complaint alleges that Defendants breached this duty when they failed to follow the HAMP program guidelines and foreclosed while Mr. Dennis' application was pending. (Am. Compl. ¶¶ 96-105). This breach was the direct and proximate cause of the wrongful foreclosure of Mr. Dennis' home. (Am. Compl. ¶¶ 160-61). Mr. Dennis' count for negligence asserts the common law elements for a negligence cause of action.

To the extent Defendants argue otherwise, the court should disregard it. Defendants move to dismiss Plaintiff's claim of negligence on the basis that the existence of an express contract, the Deed of Trust and Note, provides only a contractual remedy, not a tort remedy. However, Plaintiff's allegations of negligence in Count Seven arise from Defendants' breach of their duties under HAMP, not the breach of the deed of Trust or Note. (Am. Compl. ¶¶ 31-34). In fact, Defendants fail to address any of the allegations in Count Seven and instead rely on a line of cases holding that when a plaintiff alleges merely "disappointed economic expectations, the law of contracts, not the law of torts provides the exclusive remedy." (Defs' Mem. at 19). However, these cases involved actions where the Plaintiffs lacked privity of contract with the Defendants and so resorted to negligence claims in order to petition for relief, none of which are

---

[15] It is an elementary principle of negligence that a person who creates a risk of foreseeable harm to others is under a duty to exercise reasonable care to prevent the threatened harm. . . "[I]n general, anyone who does an affirmative act is under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act." *Dalldorf v. Higgerson-Buchanan, Inc.*, 402 F. 2d 419, 421-422 (4th Cir. Va. 1968) (emphasis added) (internal citations omitted).

at issue in this case. *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 262 Va. 473 (2001); *Ward v. Ernst & Young*, 246 Va. 317 (1993); *Rotonda Condo. Unit Owners Ass'n v. Rotonda Assocs.*, 238 Va. 85 (1989).[16]

These cases are inapplicable to the present case. These cases establish that disappointed economic expectations do not have a remedy in tort when the loss is a result under express contracts. *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E. 2d at 344, 347 (1991). However, Plaintiff's negligence claims are not based on an express contract. The assertion by Defendants that disappointed economic expectations under a contract cannot be addressed by tort law is irrelevant to the Plaintiff's allegations of negligence under HAMP obligations. Therefore, the motion to dismiss Count Seven based on the existence of an express contract should be denied.

## VIII. PLAINTIFF HAS STATED A FRAUD CLAIM WITH PARTICULARITY

In order to state a claim for fraud, Mr. Dennis must establish that Wells Fargo (1) made a false representation (2) of a material fact (3) made intentionally and knowingly (4) with the intent to mislead (5) relied upon by the misled party (6) and damages. *Winn v. Aleda Constr. Co.* 315 S.E.2d 193, 195 (1984). The Plaintiff has pled all of these elements with specificity (Am. Compl. ¶¶ 201- 227). Defendant's argument that Plaintiff does not plead fraud with particularity to state a claim as required by Rule 9(b) is completely inaccurate. (Defs' Mem. at 22). Without citation, Defendant states that the Plaintiff must, but has failed to allege the time, place, manner or circumstances surrounding the alleged fraudulent conduct and fails to provide the nature or source of intentional fraudulent conduct. (Defs' Mem. at 22). Defendant is incorrect in two

---

[16] Defendants also rely on *Willard v. Moneta Bldg. Supply, Inc.* for the proposition that disappointed economic expectations do not amount to an injury to personal property, and the law of contracts provides the remedy for such a loss. 262 Va. 473, 480 (2001). However, the relevant issue in *Willard* was whether shareholder's dissenter rights were property interests. *Id.* at 480-81.

important respects: first, the Plaintiff has provided more than enough specific facts to maintain all the elements of a fraud claim and, second, the litany of factors noted by Defendants are not required to state a *prima facie* case for fraud.[17]

Another erroneous argument by the Defendant is that the claim is time-barred because the Plaintiff knew or should have known he was a victim of fraud on June 22, 2009, without any explanation as to why that date controls. The Amended Complaint clearly alleges that Wells Fargo made misrepresentations of material facts upon which Mr. Dennis relied as late as April of 2011, when it was still assuring him it would not foreclose as long as he was being considered for a loan modification. (Am. Compl. ¶ 224). The home was foreclosed on April 20, 2011, and this case was filed on July 15, 2011, within three months and well within the two-year statute of limitations provided in Va. Code Ann. §§ 8.01-243, 8.01-249.

Finally, Defendants argue that the Plaintiff cannot state a tort claim where there is an express contract and the losses suffered resulted from a breach of duty assumed only by an agreement. (Defs' Mem. at 20). The allegations of this complaint do not involve a run-of-the-mill breach of duty arising only from a contract but instead involved the extraordinary circumstances whereby Mr. Dennis had numerous interactions over a long period of time in which Wells Fargo repeatedly made numerous and various misrepresentations designed to

---

[17] Wells Fargo told Plaintiff that he had to stop paying his mortgage for three months in order to be considered for a HAMP modification, which was a misrepresentation of a material fact made intentionally by Wells Fargo and upon which Mr. Dennis relied. As a result, Wells Fargo considered Mr. Dennis to be in default on his mortgage, and thus when it denied the modification of Mr. Dennis' loan, Wells Fargo foreclosed on Mr. Dennis' home. While it was foreclosing on Mr. Dennis' home, Wells Fargo repeatedly lied to Mr. Dennis by assuring him that it would not foreclose as long as his application was being considered, never intending to keep that assurance. *Supervalue, Inc. v. Johnson*, 276 Va. 356, 368 (2008); *Tidewater Beverage Servs., Inc., v. Coca Cola, Co.*, 907 F. Supp. 943 (E.D. Va. 1995)(holding that a defendant's misrepresentations were not merely unfulfilled promises, but deliberate misstatements of an existing fact). Finally, foreclosure caused a list of damages to Plaintiff, including deprivation of alternate remedies, deprivation of a place to live, credit damage, and emotional distress. *Id.* Had the Defendants not misled the Plaintiff, he could have sought other remedies such as bankruptcy protection, continuing to make his original, regular monthly payments, or a sale of the home.

mislead him and deprive him of his home. *See, e.g., Rossmann v. Lazarus*, No. 1:08CV316 (JCC), 2009 WL 87583, at *9 (E.D. Va. Jan. 9, 2009)(citing *Nat'l Westminster Bank, U.S.A. v. Ross,* 130 B.R. 656, 678-79 (S.D.N.Y.1991), *aff'd,* 962 F.2d 1 (2d Cir.1992) (no fiduciary relationship between borrower and lender absent extraordinary circumstances).

This case is distinguishable from the holding in *Augusta Mut. Inc. So. v. Mason*, where an insurance agent misrepresented the condition of real property in order to exact a commission from the underwriter that issued the policy based on the misrepresentation. 645 S.E.2d 290, 294 (Va. 2007). In this case, from the very moment that Plaintiff called Wells Fargo to explore his options, Wells Fargo undertook the role of advisor and counselor, assuring the Plaintiff to trust it and have confidence in its advice, engaging him in many communications both in writing and over the phone, while leading him every step of the way to foreclosure under the guise of assistance. *See, e.g., Rossmann v. Lazarus*, 2009 WL 87583, at *9 (when there are extraordinary circumstances , a fiduciary relationship is developed). The trust and confidence Wells Fargo sought to engender are the very foundation of a fiduciary relationship. *Oden v. Smith*, 379 S.E. 2d 346 (Va. 1989). The facts allege extraordinary circumstances between Wells Fargo and Mr. Dennis, where Wells Fargo was clearly in a superior position to Mr. Dennis. *Carstensen v. Chrisland Corp.,* 442 S.E.2d 660, 666-67 (Va. 1994)(discussing the measure of damages resulting from a fiduciary breach in a real estate transaction where "we considered the measure of damages in a case where a fiduciary withheld information from its principal which, if disclosed, would have caused the principal to reject the transaction.") The fraud alleged in this case does not spring from the underlying note and deed of trust, but from the relationship that developed over the course of several years in Plaintiff's effort to modify his home mortgage while Wells Fargo induced him to default so it could foreclose. *Id.*

## IX. PLAINTIFF HAS STATED A CLAIM FOR CONSTRUCTIVE FRAUD.

Mr. Dennis sufficiently pleads with particularity a cause of action for constructive fraud. Defendants erroneously contend that the constructive fraud claim should be dismissed because Defendants misrepresentations relate to duties arising under the contract entered into by the parties. (Def's Mem. at 22). However, Plaintiff's constructive fraud claim should not be dismissed because Defendants' misrepresentations lie outside of any contract between the Plaintiff and Defendants.

Defendants cite *Richmond Metropolitan Authority* observing that a party may show both a breach of contract and breach of duty, but "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.,* 507 S.E. 2d at 347 (citing *Foreign Mission Bd. v. Wade,* 242 Va. 234, 241, 409 S.E.2d 144, 148 (1991)) and observing that plaintiffs had only alleged "breach of contractual obligations 'because no duty apart from contract to do what is complained of exists.'" Id. at 559 (citing *Oleyar,* 217 Va. at 90, 225 S.E.2d 398, 399 (1976)).

The same is not true here; Plaintiff's constructive fraud claim does not involve a breach of the contract, but rather Defendants' promise to evaluate Plaintiff for HAMP, to follow the guidelines of HAMP, and not to foreclose while he was being reviewed for HAMP. These promises and representations created a duty apart from the Deed of Trust and Note.[18]

---

[18] Defendants now cite *Acuna,* where the court dismissed the plaintiff's constructive fraud claim because the alleged misrepresentations "all arise out of the parties' contractual duties, as they pertain to the parties' obligations under the Note and Deed of Trust, including loan payments, the foreclosure, or the modification process." *Acuna* , 2011 U.S. Dist. LEXIS 52971, at *5. However, the allegations of this constructive fraud claim involved Chase's statements to the plaintiff regarding his loan and foreclosure and none involving HAMP guidelines, compliance, or eligibility. Specifically, Acuna's claim alleged constructive fraud based on representations that his "request for loan modification would be considered sooner if he defaulted" and that "the foreclosure sale had been put on hold" Id. the Plaintiff alleges the misrepresentations by Defendants involving HAMP eligibility and compliance, not the terms of the Note and Deed of Trust. The *Acuna* court (as have many others[18]) denied plaintiff's breach of contract claim seeking enforcement of HAMP because the plaintiff lacked 3rd party beneficiary standing to challenge the lender's lack of compliance with Treasury Department guidelines under HAMP. *Id.* Borrowers are neither parties to HAMP

Defendants correctly state that for a claim of constructive fraud a plaintiff must show "by clear and convincing evidence that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation" and "'that one has represented as true what is really false, in such a way as to induce a reasonable person to believe it, with the intent that the person will act upon this representation.'" *Mortarino v. Consultant Eng'g Servs.*, 251 Va. 289, 295(1996)(quoting *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148 (1994).

Here, Mr. Dennis has adequately alleged the elements of constructive fraud and need not prove it by clear and convincing evidence until trial. The Plaintiff has alleged that the defendants made material false representations regarding their compliance with HAMP and the Plaintiff's evaluation under HAMP to the Plaintiff with the knowledge that the Plaintiff would take these statements and assurances as true and would act or refrain from acting upon these assurances and, subsequently, the Plaintiff suffered damages.

The Amended Complaint alleges reliance. Mr. Dennis contacted Defendants on multiple occasions for assistance and was told that the foreclosure sale would be postponed as long as he complied with Defendants' requests which he did at every turn. (Am. Compl. ¶¶ 66-68.) After timely complying with Defendants requests and relying on their representations, Mr. Dennis believed that the foreclosure sale would be postponed, his HAMP review would continue, and he would ultimately be given a new TPP as promised. (*Id.* ¶ 73.) The Amended Complaint also asserts that the damage Mr. Dennis endured was his lost opportunity to have a HAMP evaluation and possibly keep his home with an affordable monthly payment, his lost chance to pursue other

---

agreements nor third party beneficiaries. If borrowers are not parties to HAMP agreements, then claims of constructive fraud alleging false promises made by lenders about their HAMP obligations to borrowers should not then be dismissed by courts as arising out of the contractual duties between the lenders and borrowers.

loss mitigation options, the ultimate wrongful foreclosure of his home, and the emotional rollercoaster he experienced throughout his dealings with Defendants.

## X.     A DECLARATORY JUDGMENT IS A PROPER REMEDY FOR PLAINTIFF.

Whether the Court affords declaratory relief under the Federal Declaratory Judgment Relief Act or Virginia law, Count 10 should not be dismissed because any declaratory judgment action has not been rendered moot by the foreclosure sale. Defendants claim there is no "'substantial controversy between the parties . . . of sufficient immediacy' that warrants judgment of declaratory relief." (Defs' Mem. at 25 (citing *Maryland Cas. Co. v. Pac. Coal & Oil*, 312 U.S. 270, 273)). Defendant also cites *Horvath v. Bank of N.Y., N.A.* for the premise that after foreclosure "declaratory relief will serve no useful purpose." 2010 U.S. Dist. LEXIS 19965 (E.D. Va. Jan. 29, 2010). However, the court in *Horvath* actually stated that "[b]ecause the foreclosure on the Property has already occurred, declaratory relief will serve no useful purpose, particularly in light of the Court's rulings herein with respect to Horvath's other substantive claims." The court went on to dismiss Horvath's other claims, suggesting that a declaratory judgment would serve no purpose because those claims lacked merit. To the contrary, in this case Plaintiff has alleged viable and meritorious state common law claims. The Court should refrain from dismissing the motion for declaratory judgment to determine the unlawful foreclosure sale was void or alternatively voidable.

## XI.     THE PLAINTIFF IS ENTITLED TO PUNITIVE DAMAGES, ATTORNEYS FEES AND COSTS.

Plaintiff has demonstrated throughout the Amended Complaint and this brief that he is entitled to punitive damages, statutory damages, attorneys fees and costs based in statute and common law. Yet, the Defendants request that the court strike these demands because

33

"Plaintiff's claim for punitive damages is utterly unsubstantiated" and because he has not pled that the Defendants actions were "reckless, intentional, or willful." (Defs' Mem. at 27).

First, the VECOA provides for actual, statutory, and punitive damages along with attorneys fees and costs. Va. Code. Ann. § 6.2-505. Likewise, the ECOA also provides for attorneys fees and costs. 15 U.S.C. § 1691(e). Next, Virginia recognizes compensatory as well as punitive damages at common law. *Smith v. Litten*, 507 S.E.2d 77, 80 (Va. 1998). Where a Plaintiff pleads an intentional tort, a jury may award punitive damages. *Id.* In this case, the Plaintiff has pled numerous, reckless, intentional and willful acts constituting intentional torts under Virginia law and therefore he has sufficiently pled he is entitled to recover punitive damages for each claim. *Id.; accord Green v. Ingram*, 608 S.E.2d 917, 923 (Va. 2005)(holding that a plaintiff is entitled to recover punitive damages where he has pled facts that the defendant had actual or constructive knowledge that the plaintiff would be harmed by the acts done or omitted). For these reasons, the Mr. Dennis' claims for actual, statutory, and punitive damages as well as attorneys' fees and costs are all proper and should not be dismissed.

## CONCLUSION

For the reasons articulated in this Memorandum in Opposition, the Plaintiff respectfully requests that the Defendant's Motion to Dismiss be denied in its entirety. If the court determines that the Amended Complaint lacks particularity required over and above that required by Rule 8, the Plaintiffs move the court for leave to file an Amended Complaint.

Respectfully submitted,

**JAMES DENNIS**

By Counsel

34

_____ /s/ _____
Amy Disel Allman, Esq., VSB # 76177
Virginia Legal Aid Society, Inc.
155 East Washington Street
P.O. Box 3356
Suffolk, Virginia  23439-3359
Telephone: (757) 539-3441 ext. 15
Facsimile: (757) 539-5142
amyd@vlas.org

Susan M. Rotkis, Esq., VSB #40693
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
Telephone (757) 930-3660
Facsimile (757) 930-3662
srotkis@clalegal.com

Leonard S. Bennett, Esq., VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
Telephone (757) 930-3660
Facsimile (757) 930-3662
lbennett@cox.net

Counsel for Plaintiff, James Dennis

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of September, I electronically filed Plaintiff's

Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint

with the Clerk of the Court using the CM/ECF system, which will then send a notification of

such filing (NEF) to the following:

> Hunter W. Sims, Jr. (VSB # 09218)
> Email:hwsims@kaufcan.com
> J.Bradley Reaves (VSB # 71389)
> R. Ellen Coley (VSB #75970)
> Email: recoley@kaufcan.com
> Kaufman & Canoles, P.C.
> 150 West Main Street, Suite 2100
> Norfolk, Virginia 23510
> Telephone: (757)624-3000
> Facsimile: (757)624-3169

_____/s/_____
Amy Disel Allman, Esq., VSB # 76177
Virginia Legal Aid Society, Inc.
155 East Washington Street
P.O. Box 3356
Suffolk, Virginia  23439-3359
Telephone: (757) 539-3441 ext. 15
Facsimile: (757) 539-5142
amyd@vlas.org

Susan M. Rotkis, Esq., VSB #40693
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
Telephone (757) 930-3660
Facsimile (757) 930-3662
srotkis@clalegal.com

Leonard S. Bennett, Esq., VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
Telephone (757) 930-3660
Facsimile (757) 930-3662
lbennett@cox.net
Counsel for Plaintiff, James Dennis